UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZACHERY R.,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

CASE NO. C20-1172-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an administrative law judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1986.[1] Plaintiff has at least a high school education and previously worked as a baker, filing clerk, technical support, and cook. (AR 29, 256.) Plaintiff filed applications for DIB and SSI on April 10, 2018, alleging disability beginning February 26,

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

2018. (AR 205–17.) The applications were denied at the initial level and on reconsideration. On October 10, 2019, the ALJ held a hearing and took testimony from Plaintiff and a vocational expert (VE). (AR 36–77.) On November 6, 2019, the ALJ issued a decision finding Plaintiff not disabled. (AR 12–35.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on June 30, 2020 (AR 1–6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appeals this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).

At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 17–18.)

At step two, the ALJ must determine whether a claimant suffers from a severe impairment. The ALJ found Plaintiff has the following severe impairment: multiple sclerosis (MS). (AR 18.) The ALJ found that the record contained insufficient evidence of mood and anxiety disorders and, therefore, found them to be non-severe. (AR 19.) Additionally, Plaintiff alleged right-eye blindness from optical neuritis in connection with his MS, which the ALJ found was not a medically determinable impairment during the period at issue based upon the evidence in the record. (AR 18–19.)

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 19–20.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 41.967(a), with the following limitations:

> He can occasionally stoop and crouch. He cannot crawl, kneel, or climb ramps, stairs, ropes ladders, or scaffolds. He can perform frequent handling, fingering, and feeling. He cannot engage in balancing, driving, working at heights, ambulating on uneven surfaces, working in proximity to fast-moving machinery, or working in proximity to hazardous conditions. He is capable of engaging in unskilled, repetitive, routine tasks in two-hour increments. He will be five percent less productive than the average worker in the workplace. He will be absent from work ten times per year, with absences approximately evenly spaced throughout the year.

(AR 20–21.) With that assessment, the ALJ found Plaintiff unable to perform her past relevant work. (AR 29.)

ORDER
PAGE - 3

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found Plaintiff capable of performing other jobs, such as work as a table worker, taper, and document preparer. (AR 29–30.)

Plaintiff argues that the ALJ erred by improperly rejecting (1) findings from physicians and (2) Plaintiff's statements and, because of these errors, Plaintiff argues that the ALJ inaccurately evaluated Plaintiff's RFC and step five findings. Plaintiff requests remand for an award of benefits or, in the alternative, remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

**1. Medical Opinions**

The regulations effective March 27, 2017, require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors.[2] 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The regulations require an ALJ to specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id*. at §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

Further, the Court must continue to consider whether the ALJ's analysis is supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

---

[2] The Ninth Circuit has not yet addressed the 2017 regulations in relation to its standard for the review of medical opinions.

ORDER
PAGE - 4

Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Zhu v. Comm'r of Social Sec.*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (applying the substantial evidence standard under the 2017 regulations). With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

A. Dr. Rodney Johnson, M.D.

Dr. Johnson is the Plaintiff's neurologist and has treated Plaintiff for his MS since 2012. (AR 335–36, 362.) On March 12, 2018, Dr. Johnson found that Plaintiff had a slow right pupil and mild gait ataxia and opined that Plaintiff experienced fatigue and balance limitations that would "limit activities substantially." (AR 394.) Also on March 12, 2018, Dr. Johnson found that it would be medically necessary for Plaintiff to be absent from work due to "unforeseen flair of MS." (AR 398.) In a letter dated April 17, 2018, appealing the denial of Plaintiff's short term disability, Dr. Johnson opined that Plaintiff "is very impaired at this time with difficulties with incontinence, night sweats and trouble with balance which has led to falls and loss of consciousness." (AR 362.) In certifications for accommodations dated April 17, 2018 and July 24, 2018, Dr. Johnson assessed that Plaintiff "fatigues readily," has "difficulty with concentration, speed of processing," and that he would be limited in performing his current job because "he would be slow and may have episodes of forgetfulness." (AR 368–69, 378–79.) With that assessment, Dr. Johnson opined that Plaintiff required accommodations of "lower case load than average to allow for more time to complete tasks." (AR 369, 379.) Prior to 2018, Dr. Johnson last treated Plaintiff in 2016, during which time Dr. Johnson assessed that Plaintiff had "probable chronic persistent right optic neuritis." (AR 332.)

The regulations require the ALJ to articulate the persuasiveness of each medical opinion and explain how the ALJ considered the supportability and consistency factors for that opinion.

ORDER
PAGE - 5

20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The ALJ found Dr. Johnson's March 2018 opinions unpersuasive because they were provided before the doctor examined Plaintiff on March 23, 2018 (AR 326), and, therefore, were based on Plaintiff's subjective reports and had no objective basis. (AR 26.) The ALJ also found that the March 2018 opinions were inconsistent with Dr. Johnson's later examination and the examination by the consultative examiner, Dr. Phan, and were "vague as to functional limitation." (AR 26.) The ALJ found Dr. Johnson's April 2018 letter unpersuasive because it was vague as to functional limitations, based primarily on Plaintiff's subjective complaints, unsupported by examination notes, and "the record contains no objective findings or treatment consistent with chronic incontinence or injuries and loss of consciousness from falls." (AR 27.) The ALJ found Dr. Johnson's April and July 2018 opinions persuasive "where they indicate that the claimant would require a lower case load and extra time to perform skilled work . . . and where they indicate that claimant would have general limitations in exertion and postural activities and mild cognitive limitations with episodes of forgetfulness." (AR 27.) The ALJ found that the April and July 2018 opinions were supported by the MRI imaging, the doctor's expertise in neurology, and his history of treating Plaintiff and were consistent with findings from a psychiatric evaluation by Dr. Stamschror. (AR 26–27.)

Plaintiff argues that the ALJ, in rejecting of Dr. Johnson's April 2018 letter, failed to consider that incontinence "is a common symptom of MS" and that "[s]uffering from incontinence is also not vague when it comes to work functioning because it will require ready access to a restroom and will result in reduced productivity." Pl. Br. at 11–12. Although Dr. Johnson's April 2018 letter reports that Plaintiff experiences "difficulties with incontinence" (AR 362), the doctor did not make medical findings regarding symptoms of incontinence and his treatment notes do not assess or provide treatment for incontinence. Plaintiff does not offer an alternative interpretation

of the medical record; rather, Plaintiff relies on bare assertions that incontinence is common in MS patients. Plaintiff's assertion does not meet Plaintiff's burden to prove disability nor does it disturb the ALJ's findings. *See Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."). The ALJ thus reasonably found Dr. Johnson's April 2018 letter unpersuasive because it was unsupported by and inconsistent with the objective medical evidence in the record.

Plaintiff further argues that the ALJ erred in considering Dr. Johnson's April and July 2018 opinions because "there is no evidence to support the conclusion that Dr. Johnson's limitations (ie-smaller caseload and more time to perform) applied only to skilled work as his opinion about fatigue and reduced speed of processing apply to all activities and not only to his skilled tech job." Pl. Br. at 10. In the RFC, the ALJ applied Plaintiff's fatigue and reduced speed of processing limitation to unskilled work by finding that Plaintiff "is capable of performing unskilled, repetitive, routine tasks in two-hour increments and will be five percent less productive than the average worker in the workplace."[3] (AR 21, 27.) Therefore, even if there was error in the ALJ's evaluation of Plaintiff's skill, this error would be harmless because the ALJ's assessment of the RFC was overinclusive such that the limitations clearly applied to unskilled work. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) ("[I]f a person can do a job that requires increased concentration, the claimant is also capable of performing work that requires less concentration.").

---

[3] Plaintiff also argues that the ALJ's finding for "the need for accommodations of a smaller caseload and additional time to complete tasks would render Plaintiff disabled under the Social Security Act." Pl. Br. 10 (citing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S 795, 803 (1999). Even if the limitations in the ALJ's RFC required workplace accommodations, the U.S. Supreme Court in *Cleveland* held that claims for social security benefits do not necessarily conflict with claims for reasonable accommodation under the Americans with Disability Act and that the two can exists side by side. *Cleveland*, 526 U.S. at 802–3; *see also Smith v. Clark Cty. School Dist.*, 727 F.3d 950, 957 (9th Cir. 2013) ("[I]t is possible that a person could claim he or she qualifies for disability benefits and still be able to work if accommodated."). Accordingly, Plaintiff does not show error in the ALJ's RFC assessment.

ORDER
PAGE - 7

Plaintiff also argues that the ALJ's conclusion that Plaintiff will be 5 percent less productive than the average worker is not based upon the evidence and further disagrees with the ALJ's RFC finding that Plaintiff will be absent 10 times a year. Plaintiff asserts that Plaintiff's limitations together "would likely cause *unpredictable* work productivity reductions and absences." Pl. Br. at 11. The ALJ is responsible for "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Social Sec. Admin*, 807 F.3d 996, 1006 (9th Cir. 2015). Accordingly, an RFC finding need not directly correspond to a specific medical opinion but may incorporate the opinions by assessing RFC limitations entirely consistent with, even if not identical to, limitations assessed by the physician. *Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (the ALJ properly incorporates medical findings by assessing limitation that are "entirely consistent" with a physician's limitations); *see also Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). The ALJ, thus, did not err by translating Dr. Johnson's assessment that Plaintiff required a "lower case load than average to allow for more time to complete tasks" into the RFC by finding that Plaintiff will be 5 percent less productive than average and absent ten times per year.

Even if the ALJ erred in evaluating Plaintiff's productivity level and absenteeism, this error would be harmless because the VE testified that an individual with Plaintiff's limitations could maintain employment with lower productive and more absences than articulated in Plaintiff's RFC. (AR 68–72.) Specifically, when presented with a hypothetical individual with Plaintiff's limitations a 5 percent reduction in productivity, the VE testified that workers in the three jobs identified—table worker, taper, and document preparer—could remain competitively employable if they are up to 15 to 20 percent less productive than average, acknowledging it can vary between

employers. (AR 68.) Similarly, the VE testified that an employee with up to fifteen absences per year is unlikely to be terminated. (AR 72.) Thus, even if the ALJ erred in finding the productivity and absenteeism limitations, this error is harmless because these limitations were overinclusive of the limitations in the VE's testimony and, therefore, were inconsequential to the nondisability determination. *See Johnson*, 60 F.3d at 1436 n.9 (9th Cir. 1995) ("[O]verinclusion of debilitating factors is harmless . . . .").

For the reasons described above, the ALJ did not err in evaluating Dr. Johnson's medical opinions.

**2. Plaintiff's Testimony**

Plaintiff contends that the ALJ improperly evaluated Plaintiff's testimony. The rejection of a claimant's subjective symptom testimony[4] requires the provision of specific, clear, and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence, but not when it merely lacks support in the medical evidence. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective

---

[4] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 9

testimony."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 5002) ("[L]ack of medical evidence cannot form the sole basis for discounting pain testimony.").

Plaintiff alleges that he is unable to work because of incontinence and other MS-related symptoms. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 22.)

For claimants with neurological disorders, such as MS, the ALJ "evaluate[s] the limitations resulting from the impact of the neurological disease process itself." 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 11. "There are several forms of MS, ranging from mildly to highly aggressive," and "[t]he effects of all forms vary from person to person." *Id.* at Listing 11(N). Therefore, the ALJ evaluates the claimant's signs and symptoms as well as "other impairments or signs and symptoms that develop secondary to the disorder." *Id.*

Plaintiff asserts that the ALJ overlooked that incontinence is a common symptom of MS and that silence in the record regarding Plaintiff's incontinence symptoms "is not a legitimate basis to question its existence." Pl. Br. at 12. Plaintiff further argues that MS symptoms can vary over time, which would further explain the lack of complaints in the medical record for Plaintiff's MS-related symptoms. *Id.* at 14. Although lack of medical evidence alone is not a sufficient basis to reject symptom testimony, *see Burch*, 400 F.3d at 68, the ALJ rejected Plaintiff's symptom allegations due to little evidence in the record of treatment and little objective evidence corroborating allegations of severe and worsening MS-related symptoms over the period at issue. (AR 22.) Further, "at all times, the burden is on the claimant to establish her entitlement to disability insurance benefits." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998).

ORDER
PAGE - 10

The ALJ reasonably concluded that the evidence in the record was inconsistent with Plaintiff's allegations of severe and worsening MS-related symptoms. The ALJ found that Plaintiff's allegations regarding his difficulties with fine motor movements, shaking hands, and typing were inconsistent with objective findings from Dr. Phan, who determined that Plaintiff "has no problem with grasp, grip, touch thumb to all fingertips, make a fist, pick up coins from flat surface, button/unbutton and zip/unzip." (AR 272–74, 347.) Similarly, the ALJ found that Plaintiff's allegations of near blindness in his right eye were inconsistent with Dr. Phan's assessment that Plaintiff's right eye vision problems could be treated with corrective lenses. (AR 53–54, 348.) An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle*, 533 F.3d at 1161. The ALJ thus offered "specific, clear and convincing" reasons for finding Plaintiff's testimony was inconsistent with the medical evidence in the record and rejecting Plaintiff's testimony about the severity of her mental health symptoms. *Molina*, 674 F.3d at 1112.

Additionally, the ALJ found that there were gaps in treatment and inconsistencies in medication taken to treat Plaintiff's symptoms. The ALJ noted that there was a long gap in treatment with Dr. Johnson, who was treating Plaintiff for his MS, noting that prior to March 2018, Plaintiff had not seen Dr. Johnson since August 2016. (AR 22–23, 331.) Similarly, the ALJ found that Plaintiff reported inconsistencies with medication taken to treat his MS. (AR 23.) Specifically, the ALJ found that Plaintiff reported to Dr. Phan in June 2018 that he had been taking Gilenya since 2008, yet treatment notes from March 2018 with Dr. Johnson stated that Plaintiff was not taking medication to treat his MS. (AR 23, 331, 346.) The ALJ may discount a claimant's subjective complaints because of "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th

Cir. 2008). Additionally, an ALJ properly considers prior inconsistent statements in evaluating a claimant's testimony. *See id.*

The ALJ thus reasonably concluded that the medical evidence and Plaintiff's prior statements were inconsistent with Plaintiff's claims of severe and worsening MS-related symptoms. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."). The ALJ's findings are supported by substantial evidence.

Even if there was error in the ALJ's evaluation of Plaintiff's symptom testimony, such error would be harmless because the ALJ's RFC assessment and step five findings reflected limitations caused by Plaintiff's alleged MS-related symptoms. *See Molina*, 674 F.3d at 1115 (an error is harmless if it is "inconsequential to the ultimate nondisability determination"); *Turner*, 613 F.3d at 1223 (ALJ need not provide reason for rejecting physician's opinions where ALJ incorporated opinions into RFC). Plaintiff testified that his incontinence would cause him to be absent from his previous jobs. (AR 49.) The ALJ questioned the VE regarding absenteeism, and the VE testified that an individual could maintain employment with up to fifteen absences per year. (AR 72.) Plaintiff also alleged that he experienced fatigue, shaking, cognitive problems, and loss of feeling in his legs. (AR 21.) The ALJ accounted for Plaintiff's fatigue and cognitive problems by assessing in Plaintiff's RFC that he would be capable of performing tasks in two-hour increments and would be 5 percent less productive than average. (AR 21, 27.) Finally, the ALJ limited Plaintiff to sedentary work due to his gait/balance problems and diminished sensation in his extremities, even though the state agency medical consultants opined that Plaintiff could

perform medium work. (AR 25.) Therefore, the ALJ's error, if any, is harmless because the step five findings and the RFC accounted for functional limitations in Plaintiff's subjective testimony.

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 27th day of July, 2021.

MARY ALICE THEILER
United States Magistrate Judge

ORDER
PAGE - 13